**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GENERAL NUTRITION INVESTMENT ) <br> COMPANY, and ) <br> GNC HOLDINGS, INC., ) <br>                 Plaintiffs, ) <br>    v. ) <br> LAUREL SEASON, INC., and ) <br> WURTZHEALTH, ) <br>                 Defendants. ) | Civil No. 20-691 |

## **OPINION**

I.     Introduction

This is a trademark infringement case. GNC seeks to enjoin defendants from selling unauthorized GNC trademarked products over the internet on Amazon. Pending before the court is a motion by plaintiffs ("GNC") for default judgment and entry of injunctive relief (ECF No. 8). The court conducted a hearing on July 28, 2020, at which defendants Laurel Season, Inc. ("Laurel Season" or "defendant") and Wurtzhealth did not appear.

II.    Service of process

Laurel Season is a New York corporation with an address for service of process registered with the New York Secretary of State at 1967 Wehrle Dr., Suite 1 #086, Buffalo, NY 14221 (ECF No. 1). GNC filed proof of service by certified mail on Laurel Season's registered agent (ECF No. 5). GNC's attorney filed a declaration that the motion for default judgment and request for injunctive relief were also sent to Laurel Season (ECF No. 10).

After the hearing, the court sua sponte raised a concern about service of process (ECF Nos. 13, 14). In response to the court's inquiry, GNC provided evidence of a

signature of receipt by an individual at the address of the registered agent (ECF No. 15). Service by mail, with a signature from the recipient registered agent, constitutes effective service on Laurel Season pursuant to Pennsylvania Rule of Civil Procedure 403 and 404(2), as incorporated by Federal Rule of Civil Procedure 4(e). *Lampe v. Xouth, Inc.*, 952 F.2d 697 (3d Cir. 1991)

At the evidentiary hearing, GNC explained that Wurtzhealth is a fictitious name. GNC attempted to serve a "cease and desist" letter on Wurtzhealth, but learned that it listed a false address (ECF No. 1). Plaintiff represented that if the injunction is entered against Laurel Season, it wants the claims against Wurtzhealth to be dismissed without prejudice and the case to be closed (Minute Entry, July 28, 2020).

III.     Jurisdiction

In considering a motion for default judgment, a district court first must be satisfied that it "has both subject matter jurisdiction over the action and personal jurisdiction over the defendant against whom the default judgment is sought." *Mercedes-Benz Fin. Servs. USA LLC v. Synergistiks, Inc.*, No. 3:18-cv-184, 2019 WL 481753, at *2 (W.D. Pa. Feb. 7, 2019). The court has federal question subject-matter jurisdiction under the Lanham Act. *Gen. Nutrition Inv. Co. v. Ingrounds Pro, Inc.*, No. 2:20-CV-00022-RJC, 2020 WL 1685118, at *3 (W.D. Pa. Apr. 7, 2020).

The court, sua sponte, raised a concern about personal jurisdiction. Laurel Season is a citizen of New York. The court ordered GNC to provide a sufficient basis for the United States District Court for the Western District of Pennsylvania to exercise personal jurisdiction over Laurel Season. (ECF No. 17). GNC filed a response in support of personal jurisdiction over Laurel Season on August 14, 2020 (ECF No. 18). Laurel

Season did not respond.

The court must ensure that it may exercise personal jurisdiction over a defendant before entering default judgment. As explained in *Mark IV Transportation & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103 (3d Cir. 2017): "[I]n contrast to the general rule that personal jurisdiction is waivable, a court considering a motion for a default judgment must sua sponte ensure that an exercise of personal jurisdiction over each defaulting defendant is proper." *Id*. at 108.

Pennsylvania asserts personal jurisdiction "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b). In this case, GNC asserts specific personal jurisdiction over Laurel Season. There are three prongs to the constitutional due process analysis: (1) the defendant must have purposefully directed its activities at Pennsylvania; (2) the litigation must arise out of or relate to at least one of those activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co*., 496 F.3d 312, 317 (3d Cir. 2007).

GNC argues that personal jurisdiction over Laurel Season is proper because Laurel Season: (1) purposefully directed trademark infringement at GNC, which it knew was headquartered in Pittsburgh, Pennsylvania; (2) its primary business was the sale of unauthorized GNC trademarked goods over the internet through an Amazon storefront; (3) it contractually chose to use Amazon's internet platform and fulfillment program, knowing that distribution network would generate sales from all 50 states, including Pennsylvania; (4) it sold over 22,000 units of goods, supporting a reasonable inference of regular and systematic sales within Pennsylvania; and (5) it chose not to appear in this action, thereby frustrating GNC's ability to perform more detailed jurisdictional

3

discovery.

There is a reduced standard to demonstrate personal jurisdiction in the context of a default judgment. Although plaintiffs retain the burden to demonstrate that personal jurisdiction over defendants is proper, plaintiffs can satisfy that burden with a prima facie showing. *D'Onofrio v. Mattino*, 430 F. Supp. 2d 431, 438 (E.D. Pa. 2006). Plaintiffs "may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *Id.* at 437. The lesser burden on plaintiffs is sensible. A defendant's decision, after being properly served, to not participate (or to not appear specially to challenge the existence of personal jurisdiction) deprives a plaintiff and the court of the opportunity to conduct jurisdictional discovery. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (courts must permit jurisdictional discovery unless the plaintiff's claim is clearly frivolous); *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) ("the absence of the defendants counsels greater flexibility toward the plaintiffs because it impedes their ability to obtain jurisdictional discovery.").

GNC argues that Laurel Season's decision to participate in Amazon's "Fulfillment by Amazon" program, by definition, provides sufficient minimum contacts with the forum state. Amazon stores and ships products all around the United States, including Pennsylvania, so that the products are close to potential consumers and can arrive quickly (ECF No. 18 at 3) (citing Description of Fulfillment by Amazon program, https://selleressentials.com/amazon/amazon-fulfillment-center-locations/). Amazon maintains 17 fulfillment centers and other fulfillment-related facilities in Pennsylvania. *Id*. GNC also argues that the sheer volume of Laurel Season's sales (22,000 units) supports the inference that regular and systematic sales were made in Pennsylvania.

4

The court concludes that GNC made a prima facie showing of minimum contacts. The claims in this case arise directly out of Laurel Season's infringing sales. Based on the existing record, there is a substantial reason to believe that Laurel Season purposefully directed its activities to Pennsylvania. In *Telebrands Corp. v. Mopnado,* No. CV21407969JLLJAD, 2016 WL 368166 (D.N.J. Jan. 12, 2016), report and recommendation adopted, No. CV147969JLLJAD, 2016 WL 355072 (D.N.J. Jan. 28, 2016), the court found the exercise of personal jurisdiction proper where the defendants used Fulfillment by Amazon because "Defendant is intentionally using Amazon's vast, established infrastructure to sell and ship its products to consumers nationwide, and is paying Amazon for the privilege, in the form of commissions and handling fees." *Id*. at *7.

The court instructed GNC to address the decision in *Guidecraft, Inc. v. OJCommerce, LLC*, No. 2:18-CV-01247, 2019 WL 2373440, at *1 (W.D. Pa. May 20, 2019), report and recommendation adopted, No. 2:18-CV-01247-LPL, 2019 WL 2371645 (W.D. Pa. June 5, 2019). In *Guidecraft*, the court concluded that nationwide sales through a website were insufficient to support jurisdiction and there must be evidence of deliberate targeting of the forum state. The court agrees with GNC that *Guidecraft* is distinguishable. In that case, the defendant specially appeared to challenge personal jurisdiction. The plaintiff in *Guidecraft*, therefore, had to present evidence to demonstrate personal jurisdiction by a preponderance of the evidence, rather than the lesser showing applicable to GNC in this case because Laurel Season chose not to appear. *Id*. at *2. In addition, the court noted that none of the parties in *Guidecraft* were citizens of Pennsylvania (both sides were over 1000 miles away), and none of the conduct was

alleged to have substantially occurred in Pennsylvania. *Id*. at *3. The court distinguished *Mopnado* on the basis that "the plaintiff in *Mopnado* was both headquartered and incorporated in New Jersey." *Id.* at *6.

In sum, the court concludes that GNC made a prima facie showing that Laurel Season had purposeful contacts with Pennsylvania and the claims in this case arise out of those contacts.

The exercise of personal jurisdiction comports with fair play and substantial justice. As an initial matter, Laurel Season bears the burden on this prong. *Guidecraft*, 2019 WL 2373440 at *4 ("Plaintiffs bear the burden of proof on the first two elements, and only if Plaintiffs meet this burden does the burden shift to Defendants to prove the third element."). Laurel Season did not meet its burden because it did not appear or submit any evidence. In any event, the exercise of personal jurisdiction comports with fair play. GNC alleges that Laurel Season's primary business is selling unauthorized GNC products. GNC notes that Laurel Season knew that GNC was located in Pittsburgh, Pennsylvania, and the primary harm of the trademark infringement would be felt in this district. The court takes judicial notice that Buffalo, New York, is a reasonable driving distance from the Western District of Pennsylvania.

GNC points out that Laurel Season took no measures to restrict sales in Pennsylvania after receiving GNC's cease and desist letter and is continuing to engage in efforts to evade enforcement. GNC reports that the day after the hearing on GNC's motion for default judgment, Laurel Season changed its storefront name again, from "NomaFort" (ECF No. 11-3) to "PhilipExConv," although the Amazon merchant ID remains the same (A3UY0PD5T3D34E) (*See* ECF No. 18 at 9 n.9: "the storefront can be

6

located at:

https://www.amazon.com/s?me=A3UY0PD5T3D34E&marketplaceID=ATVPDKIKX0DER (last accessed Aug. 12, 2020)").

In sum, the court concludes that it may properly exercise subject-matter jurisdiction and personal jurisdiction over Laurel Season.

IV. Entry of default judgment

Once a default has been entered and entry of a default judgment is sought, "the function of the trial court is not to weigh conflicting evidence, but, rather, a court must make [a] sole determination whether [the] allegations of [the] party in whose favor default has been entered are susceptible of proof." *Mifflinburg Telegraph, Inc. v. Criswell*, No. 14-612, 2017 WL 3917736 at *3 (M.D. Pa. Sept. 7, 2017).

"Defaults are treated as admissions of the facts alleged, but a plaintiff may still be required to prove that he or she is entitled to the damages sought." *Id*. The "factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Id.* at * 4. Federal Rule of Civil Procedure 54(c) provides that a default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. "The rationale for this provision is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend in the action.'" *Id*. at *16.

In determining whether default judgment should be granted, the court must also consider the "*Chamberlain* factors": "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir.

7

2000). "'When a defendant is in default and has not opposed the motion for default judgment, however, trial courts in this circuit give somewhat less deference to Chamberlain.'" *Broad. Music, Inc. v. George Moore Enterprises, Inc*., 184 F. Supp. 3d 166, 170 (W.D. Pa. 2016) (quoting *Smith Transp., Inc. v. Truck & Bus Wash, Inc*., No. 3:06–CV–160, 2007 WL 320826, at *1 (W.D. Pa. Jan. 30, 2007)).

To establish a claim for trademark infringement or unfair competition, a plaintiff must show that: "(1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark is likely to create confusion concerning the origin of the goods or services." *Freedom Card, Inc. v. JPMorgan Chase & Co*., 432 F.3d 463, 470 (3d Cir. 2005) (citing *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc*., 166 F.3d 197, 202 (3d Cir. 1999)).

GNC registered the trademarks GNC, BODYDYNAMICS, and BEYOND RAW. "To the extent that the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b). In *Ingrounds*, the court concluded: "Because GNC has registered the trademarks at issue, GNC has established that the marks are valid, legally protectable, and owned by GNC." *Ingrounds*, 2020 WL 1685118, at *3.

As to consumer confusion, "distribution of a product that does not meet the trademark holder's quality control standards may result in the devaluation of the mark by tarnishing its image." *Warner-Lambert Co. v. Northside Dev. Corp*., 86 F.3d 3, 6 (2d Cir. 1996). Under those circumstances, the non-conforming product is deemed for Lanham

Act purposes not to be the genuine product of the holder, and its distribution constitutes trademark infringement. *Id.* (citing *Polymer Technology Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir. 1994)). The trademark holder must demonstrate only that: (i) it has established legitimate, substantial, and nonpretextual quality control procedures, (ii) it abides by these procedures, and (iii) the non-conforming sales will diminish the value of the mark. *Id.*

The declarations submitted into evidence by GNC (ECF Nos. 11-1, 11-2, 11-3) satisfy this element. The risk is that a customer will receive a poor quality product that is not subject to GNC's rigorous quality controls and the customer will leave a negative review for a GNC product on Amazon or other online forums that can be viewed by other customers. As the court explained in *Ingrounds*: "GNC and its authorized sellers utilize legitimate, substantial, and nonpretextual quality control standards that are not adhered to by [the unauthorized seller]. [The unauthorized seller's] failure to adhere to these quality control standards diminishes the value of GNC's trademarks. Accordingly, [the unauthorized seller's] unauthorized sale of non-genuine GNC products is likely to create confusion concerning the origin of the GNC products at issue." *Ingrounds*, 2020 WL 1685118, at *4.

In *Ingrounds*, which involved similar trademark infringement allegations, the court concluded that the *Chamberlain* factors supported the entry of default judgment because: (1) GNC would be prejudiced because non-conforming sales would diminish the value of its trademarks; (2) defendant did not have a litigable defense; and (3) defendant's failure to participate created a presumption of culpability. *Ingrounds*, 2020 WL 1685118, at *4. The same analysis applies here.

Since February 2020, defendant has sold more than 22,000 units of unauthorized, non-genuine products bearing GNC's trademarks. In sum, GNC stated valid claims and is entitled to entry of default judgment against Laurel Season.

V.          Injunctive relief

The complaint fairly discloses GNC's intent to seek injunctive relief. In addition, GNC served its motion for default judgment and injunctive relief on Laurel Season. In deciding whether to grant a permanent injunction, the district court must consider whether: (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest. *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001).

The scope of injunctive relief was recently outlined in *City of Philadelphia v. Attorney General of United States*, 916 F.3d 276 (3d Cir. 2019), *reh'g denied* (June 24, 2019):

> "[I]njunctive relief should be 'no more burdensome to the defendant than necessary to provide complete relief to plaintiffs.' " *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 598 (3d Cir. 2002) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979) ); *see also Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d. Cir. 1994) ("Injunctive relief should be narrowly tailored to fit specific legal violations."); *Hayes v. N. State Law Enf't Officers Ass'n*, 10 F.3d 207, 217 (4th Cir. 1993) ("An injunction should be tailored to restrain no more than what is reasonably required to accomplish its ends.") (internal quotation omitted). In short, equitable relief should be "dictated by the extent of the violation established."

*Id*. at 292.

Federal Rule of Civil Procedure 65(d)(2) defines the "persons bound" by an

injunction order as follows:

(2) Persons Bound. The order binds only the following who receive actual notice of it by personal service or otherwise:

    (A) the parties;
    (B) the parties' officers, agents, servants, employees, and attorneys; and
    (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

In *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.,* 96 F.3d 1390, 1395 (Fed. Cir. 1996), the court explained: "Courts have carefully distinguished between entering an injunction against a non-party, which is forbidden, and holding a non-party in contempt for aiding and abetting in the violation of an injunction that has been entered against a party, which is permitted."  Here, Laurel Season received notice of the motion for default judgment and for injunctive relief and may be bound by the injunction order.

In this case, for the reasons set forth above, the court finds that GNC has shown actual success on the merits by way of the default judgment and would be irreparably injured by the denial of injunctive relief.  The essence of the irreparable harm caused by Laurel Season's trademark infringement is GNC's loss of control over its business reputation and goodwill. *Ingrounds*, 2020 WL 1685118 at *5 (citing *AAMCO Transmissions, Inc. v. Dunlap*, No. CIV.A. 11-4009, 2015 WL 4476423, at *3 (E.D. Pa. July 22, 2015)).  The granting of the permanent injunction will not result in greater harm to Laurel Season because it is not entitled to sell unauthorized GNC-trademarked products.  Entry of an injunction would be in the public interest to protect GNC's trademarks, avoid consumer confusion and prevent distribution of unauthorized GNC products to the public without appropriate quality controls.

VI.     Conclusion

The motion for default judgment and injunctive relief filed by plaintiffs (ECF No. 8) will be GRANTED.  An appropriate judgment and order for injunctive relief will be entered.  The oral motion by plaintiffs to dismiss WurtzHealth will be GRANTED.  The case will be marked closed, although the court retains continuing jurisdiction to enforce the injunction. *Marsh-Monsanto v. St. Thomas-St. John Bd. of Elections*, No. ST-13-CV-211, 2014 WL 465632, at *11 n. 49 (V.I. Super. Feb. 5, 2014) (citing *McCall–Bey v. Franzen*, 777 F.2d 1178, 1183 (7th Cir. 1985)).

August 26, 2020                         BY THE COURT:

                                        /s/ Joy Flowers Conti
                                        Joy Flowers Conti
                                        Senior United States District Judge